Will of Hawkinson: Hawkinson v. Oatway, 143 Wis. 136.

WILL OF HAWKINSON: HAWKINSON and others, Appellants,
vs. OATWAY, Respondent.

*April 27—May 24, 1910.*

*Appeal: Findings not supporting judgment: Stare decisis: Obiter
dicta: Wills: Proof of execution: Signatures of deceased wit-
nesses: Authentication.*

1. Although a judgment is *prima facie* erroneous because the trial
   court failed to make any finding as to an essential fact, it may
   be affirmed on appeal if it is clear that justice has been done.
2. Such a judgment may be supported by an uncontradicted infer-
   ence as to the essential fact, arising from evidentiary facts
   found.
3. Where the supreme court has persistently declared approval of a
   rule of law, though in cases where the point was not necessarily
   involved, such declaration should not be lightly ignored, espe-
   cially when, in presence of conflicting decisions in other juris-
   dictions, it amounts to an adoption of the view of those courts
   approving the rule.
4. Proof of the authenticity of the signatures of deceased or neces-
   sarily absent attesting witnesses to a will *prima facie* estab-
   lishes all facts essential to due execution to which the witnesses
   could depose if present, including the authenticity of testator's
   signature, whether autographic, by mark, or in the handwriting
   of another, also his volition in signing and his mental capacity
   and understanding of his act.
5. In such case the inference that testator executed the will with
   due understanding of its contents is not prevented or overcome
   by proof that he could not read or write the English language,
   qualified by the further facts that he had been in this country
   thirty years, had served in the Civil War, and was a prosperous
   farmer of average intelligence.

APPEAL from a judgment of the circuit court for La Fay-
ette county: GEORGE CLEMENTSON, Circuit Judge. *Af-
firmed.*

Appeal from probate of alleged will of Christian Hawkin-
son, dated September 5, 1896, to which his name appears in
the handwriting of the scrivener, Michael Doyle, who is also
the first subscribing witness. The will bears a full attesta-

tion clause certifying, *inter alia,* the signing by Christian
Hawkinson.   His name as subscribed to the will is inter-
rupted by a cross and the words "his mark."   There is no
bill of exceptions, and the court made certain findings of fact
which in the main are mere recitation of the evidence.
There is no finding of fact as to whether deceased was com-
petent, as to whether undue influence was exerted upon him,
as to whether he knew the contents of the instrument, nor as
to whether he in fact signed the same by making his mark, or
otherwise.   It is found, however, that he died May 6, 1907;
that his widow survived him about six months; that imme-
diately after his death she made the usual petition for letters
of administration, alleging intestacy; that on July 2, 1907,
she, together with one of the daughters, petitioned for the
probate of this instrument and filed it in county court; that
Hawkinson was eighty-one years old at the time of his death,
a native of Norway, came to this country before the Civil
War, could read Norwegian but could not write it, and could
neither read nor write English, was a prosperous farmer and
of average intelligence; that the subscribing witnesses both
died before testator; that their signatures are authentic; and
that the whole document, other than the signature of the
other subscribing witness, is in the handwriting of Michael
Doyle, the first subscribing witness, who was a man of good
standing, resided in the same village with the testator for
many years before the date of the will, and was or had been
a justice of the peace and drew conveyances and wills.   As
conclusion of law it is declared that the instrument is the last
will and testament of Christian Hawkinson.   From judg-
ment affirming the order of the county court admitting the
will to probate certain of the heirs at law of the deceased ap-
peal.

For the appellants there were briefs by *Orton & Osborn,*
attorneys, and by *J. H. Clary,* as guardian *ad litem,* and
oral argument by *P. A. Orton* and *C. F. Osborn.*   To the

point that mere proof of the signatures of the subscribing wit-
nesses to a will was insufficient, especially where the will is
signed by mark, they cited *In re Burbank,* 93 N. Y. Supp.
866, affirmed 185 N. Y. 559; *Peck v. Cary,* 27 N. Y. 9, 24;
*Jackson v. Vickory,* 1 Wend. 406; *Jackson v. Le Grange,* 19
Johns. 386; *Jackson v. Luquere,* 5 Cow. 221; *Claflin's Will,*
73 Vt. 129, 50 Atl. 815; *Stephens v. Stephens,* 129 Mo.
422, 31 S. W. 792; *More v. More,* 211 Ill. 268; *Gould v.
Chicago T. Sem.* 189 Ill. 282; *Hobart v. Hobart,* 154 Ill.
610; *Mead v. Presbyterian Church,* 229 Ill. 526; 1 Under-
hill, Wills, § 201; Dayton, Surrogates, 163; *Halstead's Es-
tate,* 101 N. Y. Supp. 971; *Cottrell's Will,* 95 N. Y. 329,
338; *Sizer's Will,* 113 N. Y. Supp. 210; *Hyland's Will,* 27
N. Y. Supp. 961; *Kane's Will,* 20 N. Y. Supp. 123;
*Smith's Will,* 15 N. Y. Supp. 425; *Jones v. Roberts,* 96
Wis. 427.

For the respondent there was a brief by *Carey & Mc-
Daniel,* and oral argument by *J. K. Carey* and *C. F. Mc-
Daniel.*

DODGE, J. The judgment is *prima facie* erroneous be-
cause not supported by the findings. Before a will can be
admitted to probate and before there can properly be any con-
clusion of law that an instrument "is the last will and testa-
ment" of any one, it is essential that the court must be con-
vinced that the testator signed it in the presence of witnesses
and that they attested with the formalities prescribed by
law. The trial court is required by statute to make written
decision declaring his finding on this subject. *Young v.
Miner,* 141 Wis. 501, 124 N. W. 660. Why the trial court
should have refrained from performing this duty, or coun-
sel entering the judgment should not have at least requested
a finding on this vital question, essential to the record va-
lidity of their judgment, is not apparent. Nevertheless, how-
ever erroneous the procedure, we may refrain from revers-

ing a judgment based thereon if it is clear that justice has been done. *Brown v. Griswold,* 109 Wis. 275, 85 N. W. 363.

The concrete question is whether, upon proof of the authenticity of the signatures of deceased or necessarily absent attesting witnesses, there is a legitimate inference or presumption of fact that those acts which they purport to attest did occur. Those acts include the signing or acknowledgment by the testator in the presence of the witnesses, his declaration of his purpose, his request to the witnesses to attest, and their signing for that purpose in his presence and in presence of each other. It is undeniable that an affirmative answer to this question in its broadest scope has been repeatedly declared, in words at least, by this court. *Meurer's Will,* 44 Wis. 392, 399; *Lewis's Will,* 51 Wis. 101, 113, 7 N. W. 829; *Allen v. Griffin,* 69 Wis. 529, 536, 35 N. W. 21; *O'Hagan's Will,* 73 Wis. 78, 82, 40 N. W. 649; *Gillmor's Will,* 117 Wis. 302, 94 N. W. 32; *Hanley v. Kraftczyk,* 119 Wis. 352, 361, 96 N. W. 820; *Arneson's Will,* 128 Wis. 112, 116, 107 N. W. 21. However, it is also true, as appellant urges, that in none of those cases was the effect of such evidence to prove the fact of signing by the testator necessarily involved, because in each of them the fact was either undisputed or otherwise established. As a result the conclusiveness of such utterances is perhaps open to debate. But when the court of last resort has persistently declared approval of a rule of law, it should not lightly be ignored, especially when, in presence of conflicting decisions in other jurisdictions, such declarations amount to adoption of the views of those courts approving the rule. In the light of what has been said, are we justified in departing from the rule and policy of the past?

Appellant contends that our cases overlook the fact that in case of wills their validity and existence depend on two facts, namely, execution by the testator and attestation with certain formalities by witnesses. He insists that proof of the au-

thenticity of the witnesses' signatures justifies no inference further than that they wrote them with the proper formalities. In other words, that they merely attested. To this limitation are cited numerous very direct decisions by the New York courts. Such cases, however, are all predicated on statutes of that state to the effect that if subscribing witnesses are dead the will may be established on proof of handwriting of the testator *and* of the witnesses *and* under such circumstances as would be sufficient to prove the will on the trial of an action. This is held to require, in the conjunctive, proof of authenticity of both the testator's and the witnesses' signatures, and thus to limit the inference or presumption to the regularity of other acts. *Jackson v. Luquere,* 5 Cow. 221; *Jackson v. Vickory,* 1 Wend. 406; *Jackson v. Le Grange,* 19 Johns. 386; *Peck v. Cary,* 27 N. Y. 9; *Burbank's Will,* 104 App. Div. 312, 93 N. Y. Supp. 866, affirmed 185 N. Y. 559, 77 N. E. 1183. The New York cases seem to have been followed, without noticing the statute, in *Claflin's Will,* 73 Vt. 129, 50 Atl. 815, where, however, there was no decision that the testator's signature could not be presumed from the attestation. Certain other cases cited by appellant declare a presumption in favor of due execution to arise upon proof of authenticity of signatures of testator and witnesses, but do not expressly negative such presumption from witnesses' signatures alone. *Gould v. Chicago T. Sem.* 189 Ill. 282, 59 N. E. 536; *More v. More,* 211 Ill. 268, 71 N. E. 988; *Mead v. Presbyterian Church,* 229 Ill. 526, 82 N. E. 371. In one case not cited is declared necessity of proof of a maker's signature in addition. It seems to be merely a ruling by a justice on a trial, and not a decision on review or after deliberate consideration. *Collins v. Nicols,* 1 Harr. & J. 399. The decisions in New York are, by reason of their statute, of little or no weight in Wisconsin, where we have no statute to modify general rules of evidence in case of contested wills, sec. 3788, Stats. (1898), having no application.

*Jones v. Roberts,* 96 Wis. 427, 432, 70 N. W. 685, 71 N. W. 883. We have, therefore, to consider the effect of proof of authenticity of the signature of an attesting witness in case his presence or memory is not obtainable. It is not questioned that it supports *prima facie* an inference of the attestation required by will statutes. That is declared in cases cited by appellant and generally. 2 Wigmore, Ev. §§ 1505, 1511. Upon the question of the further fact of execution by testator, admissibility and effect are controlled by the rule that in absence of primary evidence the best evidence obtainable is admissible and must be produced. The ancient rule was that, when an instrument was attested, the best and only evidence was that of the attesting witnesses. When they were gone, after first doubting if the document could be proved at all (2 Wigmore, Ev. § 1287), it was concluded that their solemn act in joining by attesting contemporaneously the very instrument was admissible as their declaration of the facts therein declared expressly or by implication, under a relaxation of the anti-hearsay rule indulged in deference to necessity and in order that duly executed instruments might not frequently fail of proof. 2 Wigmore, Ev. §§ 1306, 1505, 1506, 1511; *Adam v. Kerr,* 1 Bos. & Pul. 360; *Losee v. Losee,* 2 Hill (N. Y.) 609; *Greenough v. Greenough,* 11 Pa. St. 489; *Clark v. Boyd,* 2 Ohio, 56; *Kirk v. Carr,* 54 Pa. St. 285, 290; *Boyeus's Will,* 23 Iowa, 354, 357; *Murdock v. Hunter's Rep.* 1 Brock. 135, Fed. Cas. No. 9,941; *Garrison v. Owens,* 1 Pin. 544. This view is held by the great majority of courts with regard to all documents bearing attestation whether required by law or not, and in many jurisdictions the view that the written attestation is the best evidence in absence of the witnesses has led logically to the holding that no other evidence of testator's signature is admissible. 2 Wigmore, Ev. § 1320. Such technical exclusion of other evidence of the authenticity of a grantor's or maker's signature has not been general, and

several courts have concluded that other proof of authenticity is superior to the hearsay declarations of witnesses to instruments not required by law to be attested. *Tagiasco v. Molinari's Heirs,* 9 La. 512; *Chaffe v. Cupp,* 5 La. Ann. 684; *Shiver v. Johnson,* 2 Brev. (S. C.) 397. As to wills, however, the rule seems to be general, except for the decisions above mentioned, that the attestation itself is *prima facie* proof of all facts essential to due execution, to which attesting witnesses could depose if present, including the authenticity of testator's signature, whether autographic, by mark, or in handwriting of another, also his volition in signing and his mental capacity and understanding of his act. *Hays v. Harden,* 6 Pa. St. 409, 412; *Greenough v. Greenough, supra;* *Barker v. McFerran,* 26 Pa. St. 211; *McKee v. White,* 50 Pa. St. 354; *Leckey v. Cunningham,* 56 Pa. St. 370; *Snider v. Burks,* 84 Ala. 53, 4 South. 225; *Stevens v. Leonard,* 154 Ind. 67, 76, 56 N. E. 27; *Carpenter v. Denoon,* 29 Ohio St. 379, 391; *More v. More,* 211 Ill. 268, 71 N. E. 988; *Scott v. Hawk,* 107 Iowa, 723, 77 N. W. 467; *Eliot v. Eliot,* 10 Allen, 357; *Nickerson v. Buck,* 12 Cush. 332; *Farleigh v. Kelley,* 28 Mont. 421, 72 Pac. 756; *Clarke v. Dunnavant,* 10 Leigh, 13; *Murdock v. Hunter's Rep.* 1 Brock. 135, Fed. Cas. No. 9,941; *Croft v. Pawlet,* 2 Strange, 1109; *Wright v. Tatham,* 1 Ad. & El. 3. In view of this array of authority and the reasons underlying it, we are not at all inclined to change the attitude of this court so long and so persistently declared, even though such declarations were not entirely necessary to decision of the cases wherein uttered.

An objection that a signature by mark is not within the general rule, but should be supported by further proof, is overruled by many of the cases cited. Under the reasons of the rule as stated, the attestation quite as much declares that the testator made the mark as and for his signature as that he wrote the letters spelling his name when that appears. Indeed some courts which would require further proof of the

.authenticity of an apparent autograph hold it unnecessary for a mark, which has no individual characteristics, because .of the impossibility of authenticating the latter by any but an eye-witness. *Howard v. Snelling,* 32 Ga. 195; *Shiver v. .Johnson, supra; Tagiasco v. Molinari's Heirs, supra; Chaffe v. Cupp, supra.* The fact urged by appellant that testator :could not read or write the English language, qualified by the further facts that he had lived in this country thirty .years, served in the Civil War, and was a prosperous farmer of average intelligence, neither prevents, nor in our opinion ·suffices to overcome, the inference that he executed the will ¯with due understanding of its purport. *Walter's Will,* 64 Wis. 487, 25 N. W. 538; *Arneson's Will,* 128 Wis. 112, 115, ¯107 N. W. 21.

Our conclusion is, therefore, that from the evidentiary ¯facts found by the trial court arises *prima facie* an infer-.ence in favor of the ultimate fact that the deceased executed ¯the will as required by law. Such inference, being without ·contradiction, constitutes a preponderance of evidence and ¦therefore supports the judgment.

*By the Court.*—Judgment affirmed.